ORIGINAL

FILED
2010 APR 14 P 3: 14
CLERK RICHARD W. WICKING
NORTHERN U.S. DISTRICT COURT
DISTRICT OF CALIFORNIA

E-filing

1   Joseph R. Saveri (State Bar No. 130064)
    Eric B. Fastiff (State Bar No. 182260)
2   Brendan P. Glackin (State Bar No. 199643)
    Andrew S. Kingsdale (State Bar No. 255669)
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
5   Facsimile: (415) 956-1008

6   Daniel E. Gustafson
    Jason S. Kilene
7   Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
8   650 Northstar East
    608 Second Avenue South
9   Minneapolis, MN 55402
    Telephone: (612) 333-8844
10  Facsimile: (612) 339-6622

11  [Additional counsel listed on signature page.]

12  *Attorneys for Individual Representative The Stereo Shop*

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17  THE STEREO SHOP, on behalf of itself and all others    Case No.
    similarly situated,
18                                                          CV 10 1603

19                  Plaintiff,
                                                            **CLASS ACTION COMPLAINT**
20          v.
                                                            **JURY TRIAL DEMAND**
21  TOSHIBA SAMSUNG STORAGE TECHNOLOGY
    CORP.; TOSHIBA CORP.; SAMSUNG
22  ELECTRONICS CO., LTD.; SONY OPTIARC, INC.;
    SONY NEC OPTIARC INC.; SONY CORP.; NEC
23  CORP.; NEC CORP. OF AMERICA; SONY
    OPTIARC AMERICA INC.; HITACHI-LG DATA
24  STORAGE INC.; HITACHI LTD.; LG
    ELECTRONICS, INC.; PHILIPS & LITE-ON
25  DIGITAL SOLUTIONS CORPORATION;
    KONINKLIJKE PHILIPS ELECTRONICS N.V.;
26  LITE-ON IT CORPORATION; and PHILIPS &
    LITE-ON DIGITAL SOLUTIONS USA, INC.,
27
                    Defendants.
28

865441.4                                          CLASS ACTION COMPLAINT

1          1.     Plaintiff The Stereo Shop ("Plaintiff") brings this action on behalf of itself

2  individually and a Plaintiff class (the "Class") consisting of all persons and entities who

3  purchased optical disc drives ("ODDs") and products containing them (referred to collectively as

4  "ODD Products") in the United States directly from one or more named Defendants between

5  January 1, 2004, and the present (the "Class Period").

6          2.     The ODDs that are the subject of this lawsuit include the following

7  formats: CD-ROMS ("CD"), CD-recordable/rewritable ("CD-R/RW"), DVD-ROM ("DVD"),

8  DVD-recordable/rewritable ("DVD-R/RW"), Blu-Ray ("BD"), Blu-Ray-recordable/rewritable

9  ("BD-R"/"BD-RE") and HD-DVD. As used herein, ODDs include both the optical disc drives

10  manufactured by any of the named Defendants or their affiliates, subsidiaries or co-conspirators,

11  as well as products that contain optical disc drives (e.g. DVD players, Blu-Ray players, CD

12  players, video game consoles like the Sony PlayStation 3, and personal computers with DVD or

13  Blu-Ray drives) manufactured by any of the named Defendants or their affiliates, subsidiaries, or

14  co-conspirators. During the Class Period, ODDs served as one of the primary means for

15  recording and reading music, movies, and other digital data. During this time, Defendants' sales

16  of ODDs generated billions of dollars in annual revenues and exponentially expanded with the

17  increased utilization of computers in households and businesses throughout the United States.

18  Nearly every computer that is used or sold in the United States today is equipped with an ODD.

19          3.     Upon information and belief, Plaintiff alleges that in order to maintain

20  price stability and increase profitability in the ODD market, Defendants formed a cartel and

21  conspired, combined, and contracted to fix, raise, maintain, and stabilize the price at which ODD

22  Products were sold in the United States. Plaintiff further alleges that Defendants fraudulently

23  concealed their anticompetitive conduct from Plaintiff and the Class in furtherance of the

24  conspiracy. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the

25  Class paid artificially inflated prices for ODD Products during the Class Period. Such prices

26  exceeded the amount they would have paid if the price for ODD Products had been determined by

27  a competitive market.

28

1

## JURISDICTION AND VENUE

2    4.    Plaintiff brings this action to obtain injunctive relief and to recover

3  damages, including treble damages, costs of suit, and reasonable attorneys' fees arising from

4  Defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1), pursuant to Sections 4

5  and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).

6    5.    This Court has jurisdiction over this action pursuant to Sections 4 and 16 of

7  the Clayton Act,  28 U.S.C. §§ 1331, 1337(a) and 1367.

8    6.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of

9  the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. §1391(b) and (c), in that at least one of

10  the Defendants resides in this judicial district, is licensed to do business, or is doing business in

11  this judicial district, and a substantial portion of the affected trade and commerce as described

12  below was carried out in this judicial district.

13

## PARTIES

14  **Plaintiff**

15    7.    Plaintiff, The Stereo Shop, is located at 304 Burdick Expressway West,

16  Minot, North Dakota 58701. Plaintiff purchased ODD Products directly from certain of the

17  Defendants during the Class Period.

18  **Defendants**

19    8.    Defendant Toshiba Samsung Storage Technology Corp. ("TSST") is a joint

20  venture of Defendants Toshiba Corp. and Samsung Electronics Co. that was established on

21  April 1, 2004. Toshiba owns 51% of the stock in TSST, while Samsung owns the remaining

22  49%. TSST and Toshiba share corporate headquarters, which are located at 1-1, Shibaura 1-

23  chome, Minato-ku, Tokyo 105-8001, Japan. Toshiba Corp. and Samsung Electronics Co. jointly

24  control and direct the operations of TSST. During the Class Period, TSST manufactured, sold,

25  and/or distributed ODD Products throughout the United States. Toshiba Corp. and Samsung

26  Electronics Corp. jointly control TSST.

27    9.    Defendant Toshiba Corp. ("Toshiba") is a Japanese company with its

28  principal place of business at 1-1, Shibaura 1-chome, Minato-Ku, Tokyo 105-8001, Japan.

865441.4                          - 2 -                    CLASS ACTION COMPLAINT

1 During the Class Period, Toshiba manufactured, sold, and/or distributed ODD Products
2 throughout the United Sates.

3    10.   Defendant Samsung Electronics Co., Ltd. ("Samsung") is a Korean
4 company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga,
5 Jung-gu, Seoul 100-742, South Korea. During the Class Period, Samsung manufactured, sold,
6 and/or distributed ODD Products throughout the United States.

7    11.   Defendant Sony Optiarc, Inc. ("SOI") is a Japanese company with its
8 headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Prior to 2008,
9 Defendant SOI was a joint venture between Defendants Sony Corp. and NEC Corp. called Sony
10 NEC Optiarc, Inc. On September 11, 2008, Sony Corp. purchased NEC Corp.'s interest in Sony
11 NEC Optiarc, Inc. and changed the name of SNOI to Sony Optiarc, Inc. In 2008, SOI reported
12 revenues of $1.52 billion. During the Class Period, SOI manufactured, sold, and/or distributed
13 ODD Products throughout the United States.

14    12.   Defendant Sony NEC Optiarc, Inc. ("SNOI") was a Japanese company
15 with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant
16 SNOI was created on April 3, 2006, as a joint venture between Defendants Sony Corp. and NEC
17 Corp. in which Sony Corp. had a 55% interest and NEC Corp. had a 45% interest. In 2008, Sony
18 Corp. purchased NEC Corp.'s interest in SNOI and changed the name of SNOI to Sony Optiarc,
19 Inc. During the Class Period, SNOI manufactured, sold, and/or distributed ODD Products
20 throughout the United States. Sony Corp. and NEC Corp. exercised joint control over SNOI.

21    13.   Defendant Sony Corp. ("Sony") is a Japanese company with its principal
22 place of business at 22-22 Nagike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class
23 Period, Sony manufactured, sold, and/or distributed ODD Products throughout the United States.

24    14.   Defendant NEC Corporation ("NEC") is a Japanese company with its
25 principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan.
26 During the Class Period, NEC manufactured, sold, and/or distributed ODD products throughout
27 the United States.

28

865441.4                               - 3 -                    CLASS ACTION COMPLAINT

15. Defendant NEC Corporation of America ("NEC America") is an American company with its principal place of business located at 6535 North State Highway 161, Irving, TX 75039 USA. During the Class Period, NEC America manufactured, sold, and/or distributed ODD products throughout the United States

16. Defendant Sony Optiarc America, Inc. ("SOA") is a wholly owned subsidiary of SOI and was formerly a wholly-owned subsidiary of SNOI. Defendant SOA is a Delaware corporation with its business headquarters located at 1730 N. 1st Street, San Jose, California, 95112. During the Class Period, SOA manufactured, sold, and/or distributed ODD Products throughout the United States.

17. Hitachi-LG Data Storage, Inc. ("HLDS") is a joint venture between Defendants Hitachi, Ltd. and LG Electronics, Inc., with its corporate headquarters located at 4F MSC Center Bldg., 22-23, Kaigan 3-chome, Minato-Ku, Tokyo 108-0022, Japan. Hitachi, Ltd. owns 51% of the stock in HLDS, while LG Electronics, Inc. owns the remaining 49%. Hitachi, Ltd. and LG Electronics, Inc. jointly control and direct the operations of HLDS. HLDS was established in November of 2000 and started operation in January of 2001. Between 2001 and 2005 HLDS sold over 170 million ODDs, generating approximately $5.5 billion in total revenues. During the Class Period, HLDS manufactured, sold, and/or distributed ODD Products throughout the United States.

18. Defendant Hitachi, Ltd. ("Hitachi") is a Japanese company with its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan. During the Class Period, Hitachi manufactured, sold, and/or distributed ODD Products throughout the United States.

19. Defendant LG Electronics, Inc. ("LG Electronics") is a Korean entity headquartered at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea 150-721. During the Class Period, LG Electronics manufactured, sold, and/or distributed ODD Products throughout the United States.

20. Defendant Philips & Lite-On Digital Solutions Corporation is a business entity organized under the laws of Taiwan, and a joint venture between Philips and Lite-On

865441.4 - 4 - CLASS ACTION COMPLAINT

1 established in March 2007, with its principal place of business located at 16F, 392, Jui Kuang

2 Road, Taipei City, TAP 11492, Taiwan. Philips and Lite-On jointly control and direct the

3 operations of Philips & Lite-On Digital Solutions Corporation. During the Class Period, Philips

4 & Lite-On Digital Solutions Corporation manufactured, sold, and/or distributed ODD Products

5 throughout the United States.

6       21.   Koninklijke Philips Electronics N.V. ("Philips") is a business entity

7 organized under the laws of The Netherlands, with its principal place of business at

8 Groenewoudseweg 1, Eindhoven 5621 BA, the Netherlands. Philips has substantial control over

9 an integrated global enterprise comprised of itself and other entities including defendant Philips &

10 Lite-On Digital Solutions Corporation. During the Class Period, Philips manufactured, sold

11 and/or distributed ODD Products throughout the United States.

12       22.   Lite-On IT Corporation ("Lite-On") is a business entity organized under

13 the laws of Taiwan, with its principal place of business at 12-15F, 392, Jui Kuang Road, Taipei

14 City, TAP 11492 Taiwan. Lite-On has substantial control over an integrated global enterprise

15 comprised of itself and other entities including defendant Philips & Lite-On Digital Solutions

16 Corporation. During the Class Period, Lite-On manufactured, sold and/or distributed ODD

17 Products throughout the United States.

18       23.   Defendant Philips & Lite-On Digital Solutions USA, Inc. is a Delaware

19 corporation with its principal place of business located at 42000 Christy Street, Fremont,

20 California 94538. During the Class Period Philips & Lite-On Digital Solutions USA

21 manufactured, sold and/or distributed ODD Products throughout the United States.

22                   **AGENTS AND CO-CONSPIRATORS**

23       24.   Co-Conspirator Panasonic Corporation ("Panasonic") is a business entity

24 organized under the laws of Japan, with its principal place of business located at 1006, Oaza

25 Kadoma, Kadoma-shi, Osaka 571-8501, Japan. Prior to October 1, 2008, Panasonic was known

26 as Matsushita Electric Industrial Co., Ltd. During the Class Period, Panasonic manufactured, sold

27 , and/or distributed ODD Products throughout the United States.

28

865441.4                   - 5 -                   CLASS ACTION COMPLAINT

25. Co-Conspirator Panasonic Corporation of North America ("Panasonic North America") is a business entity organized under the laws of the United States, with its principal place of business located at 1 Panasonic Way, Secaucus, NJ, 07094. Prior to 2005, Panasonic North America was known as Matsushita Electric Corporation of America. During the Class Period, Panasonic North America manufactured, sold, and/or distributed ODD Products throughout the United States.

26. Co-Conspirator Pioneer Corporation ("Pioneer") is a business entity organized under the laws of Japan, with its principal place of business located at 1-1 Shin-ogura, Saiwai-ku, Kawasaki-shi, Kanagawa 212-0031, Japan. During the Class Period, Panasonic manufactured, sold, and/or distributed ODD Products throughout the United States.

27. Co-Conspirator Pioneer Electronics (USA) Inc. ("Pioneer USA") is a business entity organized under the laws of the United States, with its principal place of business located at 2265 E. 220th St., Long Beach, CA 90810. During the Class Period, Pioneer Electronics (USA) Inc. manufactured, sold, and/or distributed ODD Products throughout the United States.

28. Co-Conspirator Sharp Corporation ("Sharp") is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class Period, Sharp manufactured, sold, and distributed ODD products to customers throughout the United States.

29. The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

30. Each Defendant acted as the principal, agent, or joint venture of, or for, its affiliated entities in the sale, marketing and/or distribution of ODDs and the other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

31. Whenever this Complaint refers to an act, deed, or transaction of a corporation or entity, the Complaint is alleging that the corporation or entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees or representatives

1   while they were actively engaged in the management, direction, control or transaction of the

2   corporation or entity's business or affairs.

3        32.    Various other persons, firms and corporations, not named herein as

4   Defendants have participated as co-conspirators with the Defendants and have performed acts and

5   made statements in furtherance of the conspiracy. These firms are as yet unidentified.

6                                **CLASS ACTION ALLEGATIONS**

7        33.    Plaintiff brings this action both on behalf of itself, and as a class action

8   pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following Class:

9            All persons and entities residing in the United States who, from at
             least January 1, 2004 through the present, purchased an ODD
10           product in the United States directly from the Defendants or their
             co-conspirators. Specifically excluded from this Class are the
11           Defendants; the officers, directors or employees of any Defendant;
             any entity in which any Defendant has a controlling interest; and
12           any affiliate, legal representative, heir or assign of any Defendant.
             Also excluded are any federal, state or local governmental entities,
13           any judicial officer presiding over this action and the members of
             his/her immediate family and judicial staff, and any juror assigned
14           to this action.

15       34.    Plaintiff does not know the exact number of Class members because such

16   information is in the exclusive control of Defendants. Plaintiff believes that, due to the nature of

17   the trade and commerce involved, there are thousands of Class members, geographically

18   dispersed throughout the United States such that joinder of all Class members is impracticable.

19       35.    Plaintiff's claims are typical of the claims of the Class in that Plaintiff is a

20   direct purchaser of ODD Products, all Class members were damaged by the same wrongful

21   conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is

22   common to the Class.

23       36.    Numerous questions of law or fact arise from Defendants' anticompetitive

24   conduct that is common to the Class, including but not limited to:

25           a.    Whether Defendants engaged in a contract, combination, and/or

26                 conspiracy to fix, raise, maintain, or stabilize prices of ODD

27                 Products sold in the United States;

28

865441.4                                    - 7 -                        CLASS ACTION COMPLAINT

1             b.     Whether Defendants engaged in a contract, combination, and/or

2                    conspiracy to restrict output of ODD Products sold in the United

3                    States;

4             c.     Whether Defendants' conduct caused the prices of ODD Products

5                    sold in the United States to be artificially high and at a

6                    noncompetitive level;

7             d.     Whether Plaintiff and the other members of the Class were injured

8                    by Defendants' conduct, and, if so, the appropriate class-wide

9                    measure of damages for Class members; and

10            e.     Whether Plaintiff and the other members of the Class are entitled

11                  to, among other things, injunctive relief, and if so, the nature and

12                 extent of such injunctive relief.

13        37.     These and other questions of law and fact are common to the Class, and

14  predominate over any questions affecting only individual Class members.

15        38.     Plaintiff's claims are typical of the claims of the Class because Plaintiff

16  directly purchased ODD Products from one or more of the Defendants.

17        39.     Plaintiff will fairly and adequately represent the interests of the Class in

18  that Plaintiff is a direct purchaser of ODD Products and has no conflict with any other members

19  of the Class. Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class

20  action, and other complex litigation.

21        40.     Defendants have acted on grounds generally applicable to the Class,

22  thereby making final injunctive relief appropriate with respect to the Class as a whole.

23        41.     A class action is superior to the alternatives, if any, for the fair and efficient

24  adjudication of this controversy. Prosecution as a class action will eliminate the possibility of

25  repetitive litigation. There will be no material difficulty in the management of this action as a

26  class action.

27

28

865441.4                 - 8 -               CLASS ACTION COMPLAINT

42. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

43. Plaintiff reserves the right to expand, modify or alter the Class definition in response to information learned during discovery.

## TRADE AND COMMERCE

44. During the Class Period, each Defendant, or one or more of its subsidiaries, sold ODD Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

45. The business activities of the Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

46. During the Class Period, the defendants collectively controlled a large share of the market for ODD products globally and throughout the United States.

47. SOI had sales of $1.52 billion for the year ended March 2008, the last year for which Sony disclosed the unit's annual revenue.

48. Defendant HLDS had revenue of $2.4 billion in 2005, the last year for which figures are available, while defendant TSST forecast revenue of 250 billion yen in fiscal 2004 when it was established.

49. In 2008, Samsung estimated that the ODD market for personal computers was 313 million units per year and the ODD market for all applications (e.g., automotive audio and video, personal video recorders, set top boxes, CD/DVD players and recorders, camcorders, and game consoles) was 200 million units per year.

## FACTUAL ALLEGATIONS

### Optical Disc Drive Technology & Industry Background

50. Optical discs contain microscopic pits where data is stored. These pits are made from crystalline metal alloy and are usually pressed into the disc in a spiral arrangement, starting at the center of the disc. Once a disc containing information is inserted into the ODD, the disc spins while a lens inside the device guides a semiconductor laser beam over the disc and a

1 photodiode detects the light reflected from the disc's bumps and pits. The laser moves outward
2 from the center of the disc, scanning over the disc's surface. Then the photodiode reads the
3 light's reflection as a binary code (a series of ones and zeros) and the ODD translates into usable
4 data. Changes in the intensity of the beams as the lasers hit the pits are detected and translated
5 into electrical signals. The more pits that can be packed onto the disc, the more data the disc can
6 store. The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and 0.15
7 micrometers on BDs. Reading different disc formats requires the ODD to have lasers of different
8 wavelengths. For example, Blu-Ray disc players use a shorter wavelength laser, which is blue-
9 violet, to read discs. Additional layers can be added to the disc as well, increasing storage
10 capacity. In addition to reading discs, ODDs can write and rewrite discs, depending on the
11 technology of the drive and accompanying disc.

12          51.     An ODD is about the size of a thick book. The front of the drive has a
13 small Open/Close button that ejects and retracts the drive bay door. This is how media like CDs,
14 DVDs, and BDs are inserted into and removed from the drive. Where the disc drive is intended
15 for use in a computer, the sides of the drive have pre-drilled, threaded holes for easy mounting in
16 the drive bay in the computer case. In that case, the optical drive is mounted so the end with the
17 connections faces inside the computer and the end with the drive bay faces outside. The back end
18 of the optical drive generally contains a port for a cable that connects to the computer
19 motherboard and a connection for power from the power supply. Most ODDs also have jumper
20 settings on the back end that define how the motherboard is to recognize the drive when more
21 than one is present. These settings vary from drive to drive.

22          52.     When a recordable disc (e.g., CD-R, DVD-R or BD-R) is inserted into an
23 ODD that has the ability to record data, the ODD's laser is used to heat selectively different parts
24 of the organic photosensitive dye layer. By exposing the disc to light with the laser, the reflective
25 properties of the disc's surface change, which causes the photodiode to recognize these changes
26 as bumps and pits and read the new information on the disc.

27          53.     ODDs include half-height and slim models. Half height ODDs are thicker
28 and generally incorporated into desktop computer towers. Slim ODDs are thinner and generally

865441.4                                              - 10 -                          CLASS ACTION COMPLAINT

1  incorporated into laptop computers and other devices. As laptop computers have become more

2  popular with consumers, demand for slim optical disc drives has increased and is expected to

3  overtake half height demand over the next five years.

4       54.     Table 1 provides an overview of the names, sizes and capabilities of the

5  main, available ODD standards. Notwithstanding variables in data access speeds and writing

6  speeds, all ODDs possess the same core technology. ODDs built more recently are "backwards

7  compatible" such that ODDs with the latest technology can still read first generation CD-ROMs.

8  DVD rewritable drives have been the mainstream ODD for computers since 2006.

| Table 1: Overview of Optical Disc Drive Standards | | |
|---|---|---|
| Drive Standard | Capacity [a] | Capability |
| CD-ROM | 700 MB | Read Only |
| CD-R | 700 MB | Read, Write |
| CD-RW | 700 MB | Read, Write, Rewritable |
| DVD-ROM | 4.7 GB | Read Only |
| DVD-RAM | 4.7 GB | Read, Write |
| DVD-R [b] | 4.7 GB | Read, Write |
| DVD-RW [b] | 4.7 GB | Read, Write, Rewritable |
| BD-ROM | 25 GB Single Layer; 50 GB Dual Layer | Read Only |
| BD-R | 25 GB Single Layer; 50 GB Dual Layer | Read, Write |
| BD-RE | 25 GB Single Layer; 50 GB Dual Layer | Read, Write, Rewritable |

[a] These are standard capacities. Depending on the number of layers, or if the disc can be read double-sided, the capacity will be larger.

[b] There are other DVD standards such as DVD+R/RW, which include other features or improvements- see http://www.videohelp.com/dvd.

Source: See http://www.videohelp.com/dvd and http://www.tech-faq.com/blu-ray.shtml.

55.     The first ODD was invented with the creation of the audio compact disc

(audio "CD"), which was jointly invented by Sony and Philips. In 1972, Philips announced a

technique for storing audio recordings on an optical disc with a small diameter. At the same time,

- 11 -

1   Sony was exploring optically recording audio on a larger disc but was focusing on developing an

2   error correction method technique. In 1978, Sony and Philips agreed on a single format for the

3   disc and the error correction method that would be used. The compact disc system was

4   introduced to the public in Japan and Europe in 1982. Since the 1980s, several companies have

5   created spin-offs of the CD project by covering specific CD-based applications and extending the

6   previously established standards set by Sony and Philips.

7           56.     Since the early 1990s, once the standards for CDs and ODDs were

8   established, CD-ROM drives began to penetrate the computer market. ODDs have been in

9   common use in computers since the 1990s. Since the introduction of ODDs, manufacturers

10  developed ODDs for computers and other devices that could read and write DVDs and BDs,

11  which can hold more data than a CD-ROM.

12          57.     Today, ODDs are a standard component on almost every computer used in

13  the United States. Moreover, the ODDs are now incorporated into a broad range of other devices

14  such as Blu-Ray video players, DVD players, and game consoles. Due to the increasing

15  popularity of personal computers, hundreds of millions of ODDs and ODD Products are sold by

16  Defendants each year, generating billions of dollars in annual revenues. According to the IDC

17  analysis, between 2004 and 2008, worldwide ODD shipments generated over $45 billion in

18  revenues. As seen below, Digitimes Research estimates that worldwide ODD shipments

19  increased at an annual rate of approximately 10%, exceeding 300 million by 2007.

20

21

22

23

24

25

26

27

28

865441.4                                    - 12 -                    CLASS ACTION COMPLAINT

**Worldwide Optical Disk Drive Shipments**

Source: Digitimes Research: ICT Reports - 1Q 2005 and Q4 2007

58. Significantly, the pricing of ODD Products has not followed the trend ordinarily observable in competitive markets of decreasing in price as technology becomes dated and manufacturers learn how to manufacture more efficiently and at lower costs. In fact, despite HD-DVD vanishing from the market, prices for Blu-Ray ODDs have held constant over time.

59. Although the market for CD-ROMs has decreased, the market for Blu-Rays has grown exponentially as consumers shift toward the newer format. In a 2008 consumer survey, 56% of customers indicated that they would consider purchasing a Blu-Ray player if there was a significant drop in price. In a competitive market, Defendants would have significantly decreased their prices in order to gain this important market share from their competitors. However, here, where Defendants had cartelized the ODD market, there was no incentive to reduce prices to gain market share.

**Characteristics of the ODD Products Industry Make it Ripe for Collusion**

60. The ODD Products industry has several characteristics that facilitate a conspiracy, including market concentration, ease of information sharing, multiple interrelated business relationships, significant barriers to entry, and homogeneity of products.

## Market Concentration

61.     During the Class Period, the ODD industry has been dominated by relatively few companies, including Defendants. During the Class Period, Defendant HLDS, which is a joint venture between Defendants Hitachi and LG Electronics, established itself as the industry's top manufacturer with overall annual market share between 25% and 30% of shipments. TSST, a joint venture formed in 2004 by Defendants Toshiba and Samsung, is the second largest ODD manufacturer in the world with an annual market share in excess of 20%. During the Class Period, Defendant SOA had a 17% market share and defendant Philips & Lite-On Digital Solutions Corporation had a 30% market share. In 2008, Defendants HLDS, TSST, and SOI were among the largest producers of ODDs in the world, with a combined market share of 67%. Defendants' dominance and control over the ODD market facilitated their ability to implement their conspiracy to fix the price of ODD Products. Collectively, Defendants and Co-Conspirators control over 90% of the global ODD Products market.



Worldwide BD, DVD, and CD Drive Shipment Share by Vendor, 2005-2008

Source: IDC, 2009

- 14 -                                    CLASS ACTION COMPLAINT

1      62.    The ODD industry has an estimated Herfindahl-Hirschman Index (HHI),

2 the most common measure of industry concentration, of 1,960. The DOJ typically considers an

3 industry "highly concentrated" if it has a HHI greater than 1,800.

4 **Joint Ventures and Coordinated Business Activities**

5      63.    Defendants were also involved and relied upon joint ventures and long

6 standing business relationships in the ODD market that gave them continuous opportunities to

7 discuss pricing, capacity utilization, and other important prospective market information. As

8 noted above, the first of these joint ventures was HLDS, which was established as a joint venture

9 between Defendants Hitachi and LG Electronics in November of 2000 and started operation in

10 January of 2001. In April of 2004, Defendants Toshiba and Samsung consolidated their ODD

11 divisions to form TSST. Approximately two years later, Sony and NEC Corporation entered into

12 an ODD joint venture to form SNOI. In 2006, Lite-On acquired BenQ's ODD business to

13 become the second largest ODD manufacturer in the world. As part of the deal, Lite-On bought

14 out the BenQ shares and the joint venture was named Philips Lite-On Digital Solutions.

15      64.    Defendant Sony's President and Electronics CEO, Ryobi Chubachi, stated

16 after the signing of a Memorandum of Understanding between Sony and NEC in 2005 that

17 "Optical disc drives are key components for a broad range of devices and we are strategically

18 focused [on] our development resources in this sector." NEC's President Akinobu Kanasugi

19 added that, "The market for high value-added drives to be integrated into PCs and consumer

20 electronics products is rapidly expanding."

21      65.    The formation of these joint ventures was the product of the exchange of

22 information, and constitutes evidence of an ongoing antitrust conspiracy between Defendants.

23 Furthermore, the mutually beneficial nature of the business relations between certain Defendants

24 provided the opportunity to conspire and created a financial incentive to do so. As one Sony

25 spokesman explained when announcing the formation of SNOI, the joint venture came into

26 existence because: *"There was a feeling that those two complementary strengths [Sony and*

27 *NEC] would make more sense in a joint venture than competing against each other."*

28

865441.4               - 15 -                 CLASS ACTION COMPLAINT

1    66.    Similarly, after the formation of Philips & Lite-On Digital Solutions, the

2    company's general manager, Tseng Huan-Xiong, said that the two joint venture partners were

3    looking forward to pursuing profits without getting caught up in the "whirlwinds of price

4    competition." *See* Jinchi Hsu, *PLDS Sets Pursuit of Profits as Goal, and Challenges Itself to Be*

5    *the Second Largest Optical Storage Producer in 2007*, NewsDigest, June 9, 2007, available at

6    http://childe.blogbus.com/logs/6292928.html (translated from Chinese).

7    67.    The Defendants that are joint ventures are neither economically integrated

8    nor economically unified. Each partner in the joint venture could independently manufacture,

9    distribute, and sell ODDs and ODD Products without the assistance of the other partner(s). The

10   cartel behavior, price-fixing, bid-rigging, and other anticompetitive conduct Plaintiffs allege was

11   unnecessary to the operations of the joint venture and was not part of any legitimate function of

12   the joint venture.

13   68.    Each partner in the joint venture is a at least a potential competitor of the

14   other, and they in fact actually compete with each other.

15   **Barriers to Entry Into the ODD Industry**

16   69.    There are significant manufacturing and technological barriers to entry into

17   the ODD industry. In order to compete in the ODD industry, companies have to spend hundreds

18   of millions of dollars in research and development, licensing, and manufacturing of products.

19   Moreover, the ownership and control exerted by Defendants over ODD Product technology and

20   market share has allowed Defendants to dictate who enters the market and at what cost. These

21   barriers to entry have made it extremely difficult for smaller manufacturers of ODD Products to

22   compete with Defendants and overcome the effects of economies of scale. The financial structure

23   of the ODD industry allowed Defendants to implement their antitrust conspiracy by eliminating

24   competition, excluding rivals, and artificially stabilizing the prices of ODD Products without

25   losing market share.

26   **Trade and Business Organizations**

27   70.    During the Class Period, Defendants belonged to trade and business

28   organizations that focused on ODD Products and related industries, such as the DVD Forum, the

865441.4                                     - 16 -                          CLASS ACTION COMPLAINT

1    Optical Storage Technology Association ("OSTA"), and the International Symposium of Optical

2    Memory ("ISOM"). The DVD Forum, which includes Defendants Hitachi, LG Electronics,

3    Samsung, Sony, and Toshiba as members of its steering committee, is an organization responsible

4    for the licensing and distribution of DVD products whose "purpose is to exchange and

5    disseminate ideas and information about the DVD Format and its technical capabilities,

6    improvements and innovations." OSTA's members include LG Electronics and Sony. As

7    explained on its website, OSTA was:

8                incorporated as an international trade association in 1992 to
             promote the use of writable optical technologies and products for
9             storage of computer data. The organization's membership includes
             optical product manufacturers and resellers from three continents,
10            representing more than 85 percent of worldwide writable optical
             product shipments. They work to shape the future of the industry
11            through regular meetings of CD/DVD, file interchange, market
             development, magneto-optical and planning committees.
12

13           71.    During the Class Period, these organizations held multiple meetings and

14   conferences attended by Defendants and their employees, which provided Defendants with the

15   opportunity to meet, discuss, and agree upon their pricing of ODD Products. For example, on

16   March 16-18, 2009, the members of OSTA met at the Pacific Business Centers at 19925 Stevens

17   Blvd., Cupertino, California 95104. All Defendants were present at that meeting, where they

18   were able to communicate and confer. Similarly, the Steering Committee of the DVD Forum last

19   met on September 10, 2009, at the Universal Hilton Hotel in Los Angeles, California.

20           72.    The Blu-ray Disc Association, a worldwide group formed in 2005, includes

21   among its members Hitachi, LG, NEC, Philips, Samsung, Sony, and Toshiba. Defendants Sony,

22   LG, and Hitachi are all founding board members of the Blu-ray Disc Association which is an

23   industry consortium that develops and licenses Blu-ray Disc Technology. The Blu-ray Disc

24   Association was established by the defendants to establish standardized formats and cross license

25   technology.

26           73.    Defendants Sony, LG, Hitachi, and Samsung all participated in the first

27   meeting of Blu-ray Disc patent owners in Los Angeles, California on July 6-7, 2006. The stated

28

865441.4                                    - 17 -                    CLASS ACTION COMPLAINT

1   purpose of the event was to create joint licensing agreements amongst the participating ODD

2   manufacturers.

3           74.     The International Consumer Electronics Show, the world's largest

4   consumer electronics show, is held annually. The 2010 International Consumer Electronic Show

5   took place from January 7-10, 2010 at the Venetian in Las Vegas, Nevada. One of the topics of

6   conversation at the show was the DOJ investigation into the ODD Products market. Upon

7   information and belief, members of the conspiracy communicated with each other about the

8   conspiracy during the 2010 International Consumer Electronics Show.

9           75.     The Optical Storage Symposium (OSS), a worldwide conference held

10  annually from 2001-07, was another opportunity for Defendants to conspire to artificially inflate

11  the prices of ODD Products.

12  **Standardization of ODD Products**

13          76.     Since its inception in the 1970s, the ODD industry has been typified by

14  standardization of discs (e.g., CD-ROMs, DVD-ROMs) and ODD Products driven by industry

15  participants and a variety of industry-related organizations such as ECMA International, the

16  International Standardization Organization ("ISO"), and International Electrotechnical

17  Commission ("IEC). These organizations and their members are dedicated to "standardizing the

18  use of information communication technology and consumer electronics."

19          77.     The ODD industry is also subject to patents and intellectual property rights,

20  which require adoption of standardized product specifications. Philips Consumer Electronics

21  B.V., which is responsible for the development of CD technology and continues to hold patents

22  and licensing rights arising there from, has stated the following:

23              Standardization offers many other advantages to industry as a
                whole. For example: [1] Improvements to performance,
24              compatibility, reliability, safety and interoperability; [2] Economies
                of scale and lower costs – for example, by allowing manufacturers
25              to address multiple regions with a single product or manufacturing
                line; and [3] *Cooperation between industry leaders, reducing the*
26              *risk for 'first-mover' companies which pioneer new products or*
                *technologies.* (Emphasis added.)
27

28

865441.4                              - 18 -                     CLASS ACTION COMPLAINT

1    78.    The standardization of the ODD Products industry provided Defendants
2  with the mechanism to implement, enforce, and oversee their cartel and their anticompetitive
3  conspiracy to fix the price of ODD Products. Furthermore, as a result of this standardization,
4  ODD Products are commodity products, and buyers make decisions to purchase such products
5  based largely, if not exclusively, on price.

6    79.    Defendants recognize that their ODD products are commodities, and that
7  price is the determinative factor in their customers' purchasing decisions. This fact influenced
8  defendants' decision-making and provided economic incentives to eliminate competition and
9  collude on price. For example, in 2008 the demand for Blu-Ray ODDs for use in personal
10  computers increased. But Defendants recognized a large gap in asking price between themselves
11  and the major PC manufacturers. Rather than risk a price war, Defendants, including HLDS,
12  TSST, and Lite-On IT, collectively refrained from accepting orders until the fourth quarter of
13  2008. "Taiwanese, Korean and Japanese big ODD makers, such as HLDS, TSST, Pioneer and
14  Lite-On IT do not want to be caught up in whirlwinds of price wars. According to the product
15  planning timetables of major PC brands, price wars in the Blu-Ray disc drive industry are
16  expected to begin in the fourth quarter of 2008." *See* Jinchi Hsu, *Disagreement on OEM Prices,*
17  *PC Makers Suspend Blu-ray Offering; HLDS, TSST, Pioneer and Lite-On IT Do Not Cut Prices,*
18  DIGITIMES Inc. Taiwan, Sept. 23, 2008, *available at* http://www.digitimes.com.tw/tw
19  ("台韓日系大廠如日立樂金(HLDS)、東芝三星(TSST)、先鋒(Pioneer)與建興電子等均不
20  願陷入殺價的漩渦。根據各大PC品牌產品規劃時程，藍光光碟機戰火預計將從2008年第4
21  季開始引燃 . . .") (original sentence, translated into English).

22  **The ODD Cartel: Collusion on Prices for ODD Products**

23    80.    Plaintiff is informed and believes, and thereon alleges, that faced with
24  shrinking profits from ODD Products, Defendants formed a cartel conspired to fix, raise,
25  maintain, and stabilize the price of ODD Products in the United States at artificially inflated and
26  anticompetitive levels in order to prevent and eliminate competition and to preserve and increase
27  their revenues.

28

865441.4                                    - 19 -                    CLASS ACTION COMPLAINT

1    81.    Defendants have been the subject of government investigations for their

2  cartel activity in recent years. For example, Samsung admitted guilt and paid a $300 million fine

3  following an investigation by the United States Department of Justice ("DOJ") into price-fixing

4  of dynamic random access memory ("DRAM") computer chips. The DOJ is currently

5  investigating Samsung, LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.),

6  Toshiba, and Hitachi, among others, concerning collusion among manufacturers of thin film

7  transistor liquid crystal display ("TFT-LCDs"). The ongoing TFT-LCD criminal investigation

8  has resulted in hundreds of millions of dollars in criminal penalties and admissions of guilt by LG

9  Display ($400 million in fines) and Hitachi ($31 million in fines). It is widely believed that

10  defendant Samsung is the leniency applicant in the DOJ's investigation, which means, if true, that

11  it has admitted to its participation in the TFT-LCD conspiracy.

12    82.    These same companies have also been under investigation by the European

13  Commission. The entities mentioned in the preceding paragraph are all under investigation for

14  colluding to fix prices on TFT-LCDs sold in Europe. And in November of 2007, the European

15  Commission fined, inter alia, Sony and various related entities and the Hitachi Maxwell Limited

16  joint venture $110 million for fixing the prices of professional videotapes sold in Europe between

17  1999 and 2002. Similarly, Hitachi and Toshiba were fined by the European Commission for their

18  roles in a conspiracy to control prices and allocate market shares in the market for gas-insulated

19  switchgear between 1988 and 2004.

20    83.    On October 7, 2009, the Japan Fair Trade Commission levied $37.4 million

21  in fines against five companies, including LG Philips Displays Korea Co. and an arm of South

22  Korea's Samsung group and their affiliates, for participation in a conspiracy to fix the prices of

23  cathode ray tubes (CRT).

24    84.    The ODD market is very similar to the market for TFT-LCD, DRAM, and

25  CRT in that they are all oligopoly markets with several of the same major players. Given the

26  history of cartel behavior and other illegal anticompetitive conduct in these related markets and

27  several of the defendants' propensity to engage in illegal anticompetitive conduct, it is probable

28  such conduct extended to the ODD market. For example, in November of 2007, Kim Yong Chul,

1   the former chief lawyer for Samsung, admitted that the company "instructed me to commit

2   crimes." Chul continued, "[a] basic responsibility for all Samsung executives is to do illegal

3   lobbying, buying people with money." Chul also acknowledged that he fabricated court evidence

4   on behalf of the company and its executives, and several Samsung executives have recently been

5   convicted of bribery and other white collar crimes.

6          85.    Upon information and belief, Plaintiff alleges that Defendants are currently

7   under investigation by the DOJ for anticompetitive conduct in connection with the ODD industry.

8   Plaintiff is further informed and believes, and thereon alleges, that the United States' criminal

9   investigation of the ODD conspiracy is being conducted by the DOJ's Antitrust Division in the

10  Northern District of California.

11         86.    On October 26, 2009, Defendants SOA, TSST and HLDS confirmed that

12  they received subpoenas from the DOJ in connection with a criminal antitrust investigation into

13  possible price-fixing, bid-rigging, and allocation of markets regarding ODD Products. News

14  reports indicated that European Union and Singaporean antitrust authorities were conducting

15  similar investigations.

16         87.    On October 27, 2009, Hitachi Ltd. and Toshiba confirmed that, like Sony,

17  their ODD operations in the United Stated received subpoenas from the DOJ in a widening

18  investigation into potential antitrust violations. Additionally, they acknowledged that they were

19  also under investigation by European Union and Singaporean antitrust regulators.

20         88.    In its annual report, Philips revealed that Philips and Philips & Lite-On

21  Digital Solutions Corporation were also the subject of international investigations into

22  anticompetitive conduct in the ODD Products market:

23              On October 27, 2009, the Antitrust Division of the United States
                Department of Justice confirmed that it had initiated an
24              investigation into possible anticompetitive practices in the Optical
                Disc Drive (ODD) industry. Philips Lite-On Digital Solutions
25              Corp. (PLDS), a joint venture owned by the Company and Lite-On
                IT Corporation, as an ODD market participant, is included in this
26              investigation. PLDS is also subject to similar investigations outside
                the US relating to the ODD market. PLDS and Philips intend to
27              cooperate with the authorities in these investigations.

28

865441.4                              - 21 -                    CLASS ACTION COMPLAINT

1          89.    On October 27, 2009, a DOJ spokeswoman, Gina Talamona confirmed

2  that, "[t]the antitrust division is investigating the possibility of anticompetitive practices in the

3  optical disc drive industry."

4          90.    On October 28, 2009, it was announced that Sony and Philips were fined

5  by the foreign antitrust enforcement agency, the Taiwan Fair Trade Commission, for their

6  anticompetitive business practices in connection with the licensing of the technology for CD-Rs,

7  discs that are used in ODDs.

8          91.    It is significant that Defendants' anticompetitive behavior has been the

9  subject of a criminal grand jury investigation by the DOJ. In order for the DOJ to institute a

10  grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been

11  committed and prepare a detailed memorandum to that effect. *See* Antitrust Grand Jury Practice

12  Manual, Vol. 1, Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the

13  antitrust laws has occurred, he should prepare a memorandum requesting authority to conduct a

14  grand jury investigation.") Furthermore, following a review of the memorandum, the request for

15  a grand jury must be approved by the Assistant Attorney General for the Antitrust Division, based

16  on the standard that a criminal violation may have occurred. *See id.* In addition, the fact that the

17  DOJ Antitrust Division investigation is criminal, as opposed to civil, is also significant. The

18  Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal

19  Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation

20  and prosecution in cases involving horizontal, per se unlawful agreements such as price fixing,

21  bid rigging and horizontal customer and territorial allocations." *See* Antitrust Division Manual,

22  Chapter III.C.5. Accordingly, the existence of a criminal investigation into the ODD industry

23  supports the existence of the conspiracy alleged herein.

24  **Supply, Demand, and Pricing**

25          92.    ODD pricing during the Class Period has not behaved as would be

26  expected in a competitive market.

27          93.    After introduction into a market, consumer electronics products and their

28  component parts are typically characterized by downward pricing trends. However, the ODD

865441.4                        - 22 -                    CLASS ACTION COMPLAINT

1  market has been characterized by unnatural price stability and certain periods of upward pricing

2  trends.

3          94.     The cost of manufacturing ODDs should have declined as the industry

4  consolidation and manufacturing bases shifted to lower-cost countries. However, according to

5  U.S. Bureau of Labor Statistics, around the beginning of 2004 prices for computer storage

6  devices, which includes ODDs, started to level off.

7  **Producer Price Index for Computer Storage Device Manufacturing**
**Jan. 1999-May 2009**



Source: U.S. Bureau of Labor Statistics
Producer Price Index for Exports 334112334112: Computer Storage Device Manufacturing
Note: Includes devices that allow the storage and retrieval of data from a phase change, magnetic, optical, or magnetic/optical media.

20          95.     According to industry sources, firms increasingly attempted to stabilize

21  pricing and avoid continued decreases in pricing and, presumably, profit margins.

22          96.     Changes in demand for ODDs are also unlikely to explain the unnatural

23  price stabilization during the Class Period. For example, ODD prices remained relatively stable

24  between 2004 and 2006 despite a drop in sales of DVD players.

**DVD HARDWARE SALES IN U.S.**

| () | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1Q | .030 | .094 | .358 | 1.350 | 2.220 | 3.565 | 4.858 | 6.855 | 7.741 | 7.852 | 8.350 | 6.01 | 5.80 |
| 2Q | .079 | .149 | .611 | 1.435 | 2.404 | 3.750 | 5.506 | 6.057 | 6.006 | 6.676 | 6.396 | 4.98 | 4.60 |
| 3Q | .077 | .244 | .880 | 1.550 | 2.537 | 4.740 | 6.470 | 6.593 | 6.250 | 6.831 | 6.139 | 5.39 | 4.60 |
| 4Q | .119 | .459 | 1.701 | 5.542 | 9.501 | 13.058 | 16.900 | 17.621 | 14.343 | 12.512 | 12.633 | 8.85 | 7.80 |

Includes set-top and portable DVD players, Home-Theater-in-a-Box systems, TV/DVD and DVD/VCR combination players.

DEG: The Digital Entertainment Group.

97.    Unnatural price stabilization and increases occurred in the face of

reductions in the cost of producing ODD products. During the Class Period, the cost of ODD

primary components continued to decline, yet the rate of decline for prices did not follow.



**YoY Growth of Optical Disk Storages Price Index**
2005 through 2009

Source: Bank of Japan

## Fraudulent Concealment and Equitable Tolls

98.    Plaintiff had neither actual nor constructive knowledge of the facts

constituting its claim for relief despite diligence in trying to discover the pertinent facts. Plaintiff

and members of the Class did not discover, and could not have discovered through the exercise of

reasonable diligence, the existence of the conspiracy alleged herein until October of 2009 when

1    the antitrust investigation by the DOJ became public. Defendants engaged in a secret conspiracy

2    that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was

3    a conspiracy to fix prices for ODD Products.

4            99.     Accordingly, Plaintiff and Class members could not have discovered, and

5    did not discover, despite the exercise of due diligence, the violations alleged herein until shortly

6    before the filing of this Complaint because Defendants and their co-conspirators conducted their

7    conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance

8    thereof, and fraudulently concealed their activities through various other means and methods

9    designed to avoid detection.

10          100.    Defendants and their co-conspirators engaged in a successful price-fixing

11   conspiracy concerning ODD Products, which they affirmatively concealed, at least in the

12   following respects:

13                  a.     By meeting face to face secretly to discuss prices, customers and

14                       markets of ODD Products sold in the United States and elsewhere;

15                  b.     By using certain methods of communications to evade detection,

16                       such as telephonic conversations to discuss prices, customers and

17                       markets of ODD Products sold in the United States and elsewhere;

18                  c.     By agreeing among themselves at meetings and in communications

19                       not to discuss publicly, or otherwise reveal, the nature and

20                       substance of the acts and communications in furtherance of their

21                       illegal scheme;

22                  d.     By intentionally creating the false appearance of competition; and

23                  e.     By giving customers and the public pretextual reasons for pricing

24                       changes in ODD Products, which were materially false and

25                       misleading and made for the purpose of concealing Defendants'

26                       anti-competitive scheme as alleged herein.

27          101.    For example, Defendants affirmatively concealed their conspiracy by, inter

28   alia, issuing press releases falsely asserting that ODD Products were competitively priced. For

865441.4                    - 25 -                    CLASS ACTION COMPLAINT

1   instance, on June 4, 2007, Sony issued a press release stating, "The player [Sony's Blu-Ray

2   player] gives a broader consumer segment the opportunity to experience exceptional quality of

3   Blu-ray format at a competitive price."

4             102.    One commonly cited reason that Defendants publicly stated for the

5   increased or stabilized prices of ODDs is an ostensible shortage of "pick-up heads," a component

6   of ODDs. For example, after Lite-On IT raised its OEM price quotation for half-height (H/H)

7   combo drives by 3%-5% to \$35-40 per drive, the general manager of Lite-On's optical disc drive

8   business unit, Michael Gong, stated that this price increase was caused at least in part by a

9   shortage of pick-up heads. In fact, the major global suppliers of pick-up heads include several of

10   the Defendants themselves, including Hitachi, Sony, and Sharp.

11           103.    As a result of Defendants' fraudulent concealment of their conspiracy,

12   Plaintiffs were unable to obtain necessary information bearing on the existence of their claims

13   and the running of any statute of limitations has been tolled with respect to any claims that

14   Plaintiff and the Class members have as a result of the anticompetitive conduct alleged in this

15   Complaint.

16                         **FIRST CAUSE OF ACTION**
            **Violation of Sherman Act, Section One, 15 U.S.C. § 1**

17                        **(Against All Defendants)**

18           104.    Plaintiff incorporates by reference all of the above allegations as if fully set

19   forth herein.

20           105.    Beginning at least as early as January 1, 2004, the exact date being

21   unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their

22   co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably

23   restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by

24   artificially reducing or eliminating competition in the United States.

25           106.    In particular, Defendants have combined and conspired to raise, fix,

26   maintain or stabilize the prices of ODD Products sold in the United States.

27           107.    As a result of Defendants' unlawful conduct, prices for ODD Products

28   were raised, fixed, maintained, and stabilized in the United States.

108. The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

109. For purposes of formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

        a.    Participating in meetings and conversations to discuss the prices and supply of ODD Products;

        b.    Communicating in writing and orally to fix prices of ODD Products;

        c.    Agreeing to manipulate prices and supply of ODD Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

        d.    Issuing price announcements and price quotations in accordance with the agreements reached;

        e.    Selling ODD Products to customers in the United States at non-competitive prices; and

        f.    Providing false statements to the public to explain increased prices for ODD Products.

110. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for ODD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

111. The above combination and conspiracy has had the following effects, among others:

        a.    Price competition in the sale of ODD Products by Defendants and their co-conspirators has been restrained, suppressed, and eliminated throughout the United States;

865441.4          - 27 -          CLASS ACTION COMPLAINT

1          b.      Prices for ODD Products sold by Defendants have been raised,

2                  fixed, maintained, and stabilized at artificially high and

3                  noncompetitive levels throughout the United States; and

4          c.      Direct purchasers of ODD Products from Defendants have been

5                  deprived of the benefit of free and open competition in the purchase

6                  of ODD Products.

7          112.    As a direct and proximate result of the unlawful conduct of Defendants,

8   Plaintiff and other members of the Class have been injured in their businesses and property in that

9   they paid more for ODD Products than they otherwise would have paid in the absence of the

10  unlawful conduct of Defendants.

11         113.    During the Class Period, Plaintiff and the other members of the Class

12  purchased ODD Products directly from Defendants, or their subsidiaries, agents, and/or affiliates,

13  and, by reason of the antitrust violations herein alleged, paid more for such products than they

14  would have paid in the absence of such antitrust violations. As a result, Plaintiff and the other

15  members of the Class have sustained damages to their businesses and property in an amount to be

16  determined at trial.

17                                    **PRAYER FOR RELIEF**

18         WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on

19  behalf of the Class herein, adjudging and decreeing that:

20         A.      This action may proceed as a class action, with Plaintiff as the designated

21  Class Representative and its counsel as Class Counsel;

22         B.      Defendants have engaged in a contract, combination, and conspiracy in

23  violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that Plaintiff and the Class have

24  been injured in their businesses and property as a result of Defendants' violations;

25         C.      Plaintiff and the members of the Class recover damages sustained by them,

26  as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff

27  and the Class be entered against the Defendants in an amount to be trebled in accordance with

28  such laws;

865441.4                              - 28 -                    CLASS ACTION COMPLAINT

1    D.    Defendants, their subsidiaries, affiliates, successors, transferees, assignees,

2    and the respective officers, directors, partners, agents, and employees thereof and all other

3    persons acting or claiming to act on their behalf be permanently enjoined and restrained from

4    continuing and maintaining the combination, conspiracy, or agreement alleged herein;

5    E.    Plaintiff and the members of the Class be awarded pre-judgment and post-

6    judgment interest, and that such interest be awarded at the highest legal rate from and after the

7    date of service of the initial complaint in this action;

8    F.    Plaintiff and the members of the Class recover their costs of this suit,

9    including reasonable attorneys' fees as provided by law; and

10    G.    Plaintiff and the members of the Class receive such other and further relief

11    as may be just and proper.

12                                    **JURY TRIAL DEMANDED**

13    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

14    of all of the claims asserted in this Complaint so triable.

15    Dated: April 14, 2010                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

16

17                                    By: _____
                                           Eric B. Fastiff

18                                    Joseph R. Saveri (State Bar No. 130064)
                                      Eric B. Fastiff (State Bar No. 182260)
19                                    Brendan P. Glackin (State Bar No. 199643)
                                      Andrew S. Kingsdale (State Bar No. 255669)
20                                    275 Battery Street, 29th Floor
                                      San Francisco, CA 94111-3339
21                                    Telephone: (415) 956-1000
                                      Facsimile: (415) 956-1008
22                                    jsaveri@lchb.com
                                      efastiff@lchb.com
23                                    bglackin@lchb.com
                                      akingsdale@lchb.com
24

25

26

27

28

865441.4                          - 29 -                    CLASS ACTION COMPLAINT

1   Daniel E. Gustafson
    Jason S. Kilene
2   Daniel C. Hedlund
    GUSTAFSON GLUEK PLLC
3   650 Northstar East
    608 Second Avenue South
4   Minneapolis, MN 55402
    Telephone:  (612) 333-8844
5   Fax:  (612) 339-6622
    dgustafson@gustafsongluek.com
6   jkilene@gustafsongluek.com
    dhedlund@gustafsongluek.com
7

8   Garrett D. Blanchfield
    REINHARDT, WENDORF & BLANCHFIELD
9   E-1250 First Nat'l Bank Building
    332 Minnesota Street
10  St. Paul, MN  55101
    Telephone: (651) 287-2100
11  Fax: (651) 287-2103
    g.blanchfield@rwblawfirm.com
12

13  Robert J. Gralewski
    GERGOSIAN & GRALEWSKI LLP
14  750 B Street, Suite 1250
    San Diego, CA  92101
15  Telephone: (619) 237-9500
    Fax: (619) 237-9555
16  bob@gergosian.com

17
    Marvin A. Miller
18  MILLER LAW LLC
    115 LaSalle Street
19  Suite 2910
    Chicago, IL 60603
20  Telephone: (312) 332-3400
    Fax: (312) 676-2676
21  mmiller@millerlawllc.com

22
    Dianne M. Nast
23  RODANAST, P.C.
    801 Estelle Drive
24  Lancaster, PA 17601
    Telephone: (717) 892-3000
25  Fax: (717) 892-1200
    dnast@rodanast.com
26
    *Attorneys for Plaintiff and the Proposed Class*
27

28